# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, For the Use and Benefit of BRICE ENVIRONMENTAL SERVICES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BHATE ENVIRONMENTAL ASSOCIATES, INC. and LEXON INSURANCE COMPANY,<br><br>Defendants. | Case No. 3:15-cv-00146-RRB<br><br>**<u>ORDER GRANTING DEFENDANTS' MOTION TO STAY AT DOCKET 6</u>** |

Before the Court at **Docket 6** is a Motion to Stay filed by Bhate Environmental Associates, Inc. ("Bhate") and Lexon Insurance Company ("Lexon") (collectively "Defendants"). Defendants seek an order staying this litigation pending completion of the *Contract Disputes Act* dispute resolution process and, if necessary, pending completion of arbitration thereafter. Plaintiff Brice Environmental Services Corporation opposes, in part, at Docket 17. Defendant filed a reply on November 10, 2015, seven days after the deadline per the stipulated extended briefing schedule granted by the Court at Docket 15. Plaintiff has moved to strike the reply while Defendants have moved for leave to file the reply late. The Court agrees with Defendants and finds no evidence of

ORDER GRANTING DEFENDANTS' MOTION TO STAY - 1
3:15-cv-00146-RRB

willful disregard by Defendants in the untimely filing nor any prejudice to Plaintiff by allowing Defendants' reply to stand. Therefore Plaintiff's Motion to Strike Untimely Reply at **Docket 21** is **DENIED** and Defendants' Motion to Request Leave to File Reply Late at **Docket 23** is **GRANTED.**

## BACKGROUND

Brice performed soil remediation work as a subcontractor to Defendant Bhate Environmental Associates, Inc. ("Bhate") for a large-scale soil cleanup project at the former, Cold War-era radio station near Petersburg, Alaska. The project was known as the Duncan Canal Radio Relay Station on Kupreanof Island in Alaska-Project No. 9130165 (the "Project"). The Project was led by the United States of America through the Air Force Civil Engineer Center ("AFCEC"). The parties agreed to an initial subcontract price to be paid to Brice of $3,605,350.00. Ultimately, Plaintiff and Defendant Bhate were unable to complete the Project in the planned single season and were forced to demobilize—largely due to inclement weather—until the 2015 season.

On January 6, 2015, Plaintiff submitted to Defendant Bhate a Request for Equitable Adjustment ("REA") in the amount of $2,947,899.32 for compensation resulting from Defendant Bhate's standby directives, changed and added scope, as well as other impacts caused by Defendant Bhate's disruption and interference with Plaintiff's work.[1] Plaintiff asserts that a majority of the REA involves claims against Defendant Bhate directly and unrelated to the Owner, including Defendant Bhate's lack of experienced field staff, Defendant Bhate's unsupported directives to

---

[1] Docket 1 at 3.

Plaintiff to perform work out of sequence, and Defendant Bhate's failure to perform its scope of work.[2]

Subsequently, Plaintiff and Defendant Bhate agreed it was in the best interest of both parties for Plaintiff's Subcontract to be terminated, Defendant Bhate would contract with another subcontractor to perform the 2015 work, and Brice would reduce its REA by its anticipated 2015 season costs to a total REA amount of $1,111,008 plus interest and attorney fees. Defendant Bhate, on behalf of both itself and its subcontractors, submitted a Request for Change Order ("RCO") to AFCEC on May 12, 2015.[3] Plaintiff filed the present action with the Court on August 21, 2015, alleging a breach of contract, a claim against payment bond under the Miller Act, and a violation of the 32 U.S.C. § 3901, et seq. ("the Prompt Payment Act").

## STANDARD

The Court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and "must weigh competing interests and maintain an even balance."[4] In addition to the Court's power to grant a stay, there are several statutes relevant to this matter.

**A. The Miller Act**

"The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protections they might receive

---

[2] Docket 17, Exhibit B.

[3] Docket 17.

[4] *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997), *Patel v. City of Los Angeles*, 594 F. App'x. 415, 416 (9th Cir. 2015).

under state statutes with respect to the construction of nonfederal buildings."[5] A general contractor on a federal construction project is required to furnish a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract."[6] The Miller Act then provides that a supplier or subcontractor contributing to the federal construction project who "has not been paid in full within 90 days after the day on which the person did perform the last of labor . . . may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."[7] A subcontractor's failure to comply with the notice requirement is "fatal to a Miller Act claim."[8]

### B. Federal Arbitration Act

Federal Arbitration Act ("FAA") mandates arbitration whenever a contract provides for claims to be submitted to arbitration and evidences a transaction involving interstate commerce.[9] The principle purpose of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms" and embodying "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[10]

---

[5] *Ramona Equip. Rental, Inc. ex rel. U.S. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063, 1067 (9th Cir. 2014) *cert. dismissed sub nom. Carolina Cas. Ins. Co. v. Ramona Equip. Rental, Inc.*, 135 S. Ct. 939 (2015) (internal citation omitted).
[6] 40 U.S.C. § 3133(b)(2).
[7] 40 U.S.C. § 3133(b)(1).
[8] *Ramona Equipment Rental*, 755 F.3d at 1067.
[9] 9 U.S.C. § 2, *see also Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 115 S.Ct, 834 (1995).
[10] *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 434 (9th Cir. 2015) *quoting AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–346, 131 S. Ct. 1740, 1748–49 (2011).

### C. Contract Disputes Act of 1978

The Contract Disputes Act of 1978 ("CDA") provides remedies for disputes involving government procurement contracts.[11] "To proceed under the CDA, an aggrieved contractor must first present its claim to the agency Contracting Officer."[12] If the claim is denied, then the contractor has two options: It can either (1) appeal to the governing agency board of contract appeals ("ABCA") pursuant to §§ 606 and 607(d), or (2) file suit in the Federal Court of Claims pursuant to § 609(a)(1).[13] Decisions of the ABCA may be appealed to the Federal Circuit.[14]

## DISCUSSION

Pursuant to the Miller Act, Plaintiff was required to bring this action in federal court to preserve its statutory rights. At the time of filing suit, more than ninety (90) days, but less than one (1) year, had expired from the last date upon which Brice furnished labor, equipment, and materials to the Project. Plaintiff has agreed to allow the Miller Act claims to be stayed, but opposes staying arbitration of Plaintiff's direct claims against Defendants.[15] The Court will therefore address the Motion to Stay with regard to the direct claims between the parties.

**A. Claims arising under General Contract and Subcontract intertwined**

Plaintiff has argued that a stay in this matter by the Court, with regard to claims exclusively between the parties, would be inappropriate in light of the arbitration agreement of the Subcontract. The Court recognizes that the determination of whether an issue is to be decided by an arbitrator

---

[11] 41 U.S.C. §§ 601 et seq.
[12] *Southwest Marine, Inc. v. United States*, 43 F.3d 420, 423 (9th Cir.1994); *see* 41 U.S.C. § 605(a).
[13] *Southwest*, 43 F.3d at 423.
[14] *See* 41 U.S.C. § 607(g)(1)(A).
[15] Docket 17 at 1.

or the Court depends on the arbitration agreement. Under the Subcontract, the parties have clearly indicated that the arbitrability of a particular claim or dispute falls within the scope of the arbitrator.[16] However, staying this matter pending the resolution of the Owner-related claims is not a determination by the Court on the arbitrability of the underlying issues. While Plaintiff characterizes the "vast majority" of its REA as being claims exclusively between the parties and unrelated to the Owner, that allegation is not beyond debate.[17] In fact, Defendants argue that what Plaintiff asserts is Defendant Bhate's "poor planning and coordination," fails to recognize the effect of Owner-directed scope changes and Owner-caused delays.[18] The Court finds it entirely plausible that some, if not all, of the impacts alleged by Plaintiff were the result of actions taken by the Owner, ACFEC. However, the Court need not address the appropriate characterization or assign fault for the actions that led to the impacts suffered by Plaintiff at this time. Suffice to say that there is an intertwined relationship between the Owner-related claims and those that rest solely between the parties. The intertwined nature of the all claims related to the Project supports a stay of this matter.

**B. Exhaustion of Contractual Remedies Required**

The primary contract between Defendant Bhate and the AFCEC requires that disputes be resolved through the procedures of the CDA. Plaintiff also acknowledges that Owner-related claims attributable to ACFEC are passed through to ACFEC and Plaintiff "shall not maintain any

---

[16] Docket 6, Exhibit A at 13 ¶ 15.1.
[17] Docket 17 at 8.
[18] Docket 20 at 4.

proceeding against [Defendant Bhate] with respect to the Owner-related claims until the Owner's dispute resolution process is complete."[19]

For all other claims between the parties, the Subcontract itself requires the completion of the dispute resolution process between Defendant Bhate and AFCEC, before Plaintiff can "commence or maintain any action or proceedings" against Defendant Bhate "for any damages caused by or arising, directly or indirectly, out of or in connection with any act, omission, default, breach of interference" by AFCEC.[20] While Plaintiff asserts that some of the claims are only directly between the parties, they have not sufficiently demonstrated that their claims are without connection to Defendant Bhate's dispute with AFCEC or that Defendant Bhate has failed to present Plaintiff's REA under the CDA proceedings. On the contrary, the Court does find that while Defendant Bhate may not have vigorously advocated for Plaintiff's total REA amount, Defendant Bhate did sufficiently present Plaintiff's REA in its RCO presented to AFCEC. Because the Subcontract requires exhaustion of the CDA procedures for Owner-related disputes and Plaintiff has not demonstrated why this exhaustion is presently inapplicable, a stay of this matter is appropriate pending the outcome of the Owner-related claims.

**C. Prejudice, Judicial Economy, and Efficiency**

Plaintiff alleges it will be prejudiced if a stay is granted as it will be forced to bear the brunt of the economic strain of this REA until Defendant Bhate resolves the Owner-related disputes with the AFCEC. The Court does not find this argument compelling. The economic strain of awaiting resolution of the CDA procedures between Defendant Bhate and AFCEC is, while burdensome,

---

[19] Docket 17 at 6.
[20] Docket 6, Exhibit A at 7 ¶ 6.5.

still a reasonably foreseeable event under the Subcontract. Furthermore, denying the Motion to Stay and allowing this matter to proceed would bifurcate the matter, creating parallel proceedings involving many of the same facts and witnesses. Additionally, it could potentially force Defendants to take inconsistent positions in the simultaneous proceedings, supporting Plaintiff's claims against AFCEC while defending against them in the arbitration between the parties. An order staying this matter is supported not only by the contract, but also the promotion of judicial economy and efficiency.

## CONCLUSION

For the reasons outlined above, Defendants' Motion to Stay at **Docket 6** is hereby **GRANTED.** Defendants' Motion to Request Leave to File Reply Late at **Docket 23** is **GRANTED** and Plaintiff's Motion to Strike Untimely Reply at **Docket 21** is **DENIED**. The matter is therefore **STAYED** pending a final outcome from the CDA dispute resolution process between Bhate and AFCEC.

**IT IS SO ORDERED** this 9th day of February, 2016.

S/RALPH R. BEISTLINE<br>
UNITED STATES DISTRICT JUDGE